UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, BUSINESS ENTITIES, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON EXHIBIT 1,<br><br>Defendants. | Civil Action No. 4:24-cv-634-SDJ |

**PLAINTIFF'S *EX PARTE* MOTION FOR, AND MEMORANDUM IN SUPPORT OF, ENTRY OF A (1) TEMPORARY RESTRAINING ORDER, (2) EXPEDITED DISCOVERY ORDER, AND (3) ASSET RESTRAINING ORDER**

1

# **TABLE OF AUTHORITIES**

**Cases**

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007)............................15

*Anyadike v. Vernon Coll.*, No. 7:15-CV-00157-O, 2015 WL 12964684 (N.D. Tex. 2015)............7

*Brennan's, Inc. v. Brennan*, 289 F. App'x 706 (5th Cir. 2008).........................................................9

*Century Home Ent., Inc. v. Laser Beat, Inc.*, 859 F. Supp. 636 (E.D.N.Y. 1994).........................13

*Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300 (5th Cir. 1978)..............................19

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002)..........................................................16

*Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184 (5th Cir.1979)..13

*Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-179, 2017 U.S. Dist. LEXIS 188249
(E.D. Tex. 2017)..........................................................................................................................7, 8

*Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940)..............................................................15, 16

*Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 3219939
(E.D. Tex. July 2019)......................................................................................................................19

*Emerald City Mgmt., L.L.C. v. Kahn*, 641 F. App'x 410 (5th Cir. 2016)........................................8

*Evans v. Does*, No. A:23-CV-00722-DII, 2023 U.S. Dist. LEXIS 157939 (W.D. Tex. 2023).....10

*First Command Bank v. Exner*, No. 4:21-CV-00621-P, 2021 WL 4047400 (N.D. Tex. 2021)......6

*Funimation Entm't v. Does*, No. 2:11-CV-269, 2012 U.S. Dist. LEXIS 198168
(E.D. Tex. 2012)..............................................................................................................................16

*Gadasalli v. Bulasa*, No. 4:22-CV-249, 2022 U.S. Dist. LEXIS 61791 (E.D. Tex. 2022).............8

*Gen. Univ. Sys., Inc. v. Lee,* 379 F.3d 131 (5th Cir. 2004)..........................................................8, 9

*Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*, No. 4:15-CV-0821-O,
2015 WL 13469996 (N.D. Tex. 2015)..............................................................................................6

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999)...............14, 15

*HeartBrand Holdings, Inc. v. Whitmer*, No. SA-19-CV-00358-HJB (W.D. Tex. 2020)..............11

*Hurtado v. JPMC Specialty Mortg. LLC*, No. 4:14-CV-907-O, 2014 WL 12531234
(N.D. Tex. 2014)...............................................................................................................................6

*In re Focus Media Inc.,* 387 F.3d 1077 (9th Cir. 2004).................................................................15

*Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602 (5th Cir. 2008).............................................7

*Kennedy Bldg. Assocs. v. CBS Corp.,* 476 F.3d 530 (8th Cir. 2007)............................................15

*Lakedreams v. Taylor,* 932 F.2d 1103 (5th Cir.1991) ...............................................................8, 11

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982 (11th Cir. 1995)...........................15

*Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, 1988 WL 161314 (N.D. Tex. 1988)................11, 12

*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552 (9th Cir. 1992)......................15, 16

*Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988)..........................................15

*Rohm & Haas Co. v. Cumberland Chem. Corp.*, No. H-82-1241, 1983 WL 52378
(S.D. Tex. 1983).................................................................................................................................18

*Santiago v. Bank of N.Y. Mellon*, No. 4:18-CV-00533-ALM-CAN,
2018 U.S. Dist. LEXIS 220483 (E.D. Tex. 2018)...........................................................................8

*SEC v. ETS Payphones, Inc.,* 408 F.3d 727 (11th Cir.2005).........................................................15

*TGP Franchising, LLC v. Schooley Media Ventures, LLC*, No. SA-16-CA-546-FB,
2016 WL 10567692 (W.D. Tex. 2016)............................................................................................11

*United States ex rel Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489 (4th Cir. 1999)...............15

*United States v. First Nat. City Bank*, 379 U.S. 378 (1965)...........................................................14

*Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351 (N.D. Tex. 1986).........11

**Statutes**

17 U.S.C. § 106................................................................................................................................10, 12
17 U.S.C. § 502................................................................................................................................12, 13
Fed. R. Civ. P. 65(b)............................................................................................................................6, 12
Fed. R. Civ. P. 65(c)................................................................................................................................18
Fed. R. Civ. P. 65(d)(2)(C)..........................................................................................................12, 15, 18

**MOTION**

███████████████. ("Plaintiff") seeks entry of an *ex parte* (1) Temporary Restraining Order, (2) Asset Restraining Order, (3) Expedited Discovery Order, and issuance of a Preliminary Injunction sustaining all relief herein requested. A Memorandum of Law in support is filed concurrently with this Motion below.

**MEMORANDUM OF LAW**

### I. Introduction

Defendants[1] are infringing on Plaintiff's copyrighted photographs. As alleged in Plaintiff's Original Complaint, Defendants are making unauthorized use of the Plaintiff Copyrights[2] protected by U.S. Copyright Office as ██████████████████████████ ██████████████████████████████████.[3] Plaintiff uses the Plaintiff Copyrights in connection with the advertising and sale of its ███████████ lighted cactus products. Defendants have used the Plaintiff Copyrights without permission (the "Infringing Images") to sell their own products through interactive commercial webstores ("Infringing Webstores") hosted by various e-commerce platforms like Alibaba, AliExpress, Amazon, Bonanza, DHGate, eBay, Joybuy, Shopify, and Walmart ("Marketplaces").[4] Defendants direct these unlawful business activities toward consumers in Texas (Ex. 1, ¶ 11) and have caused and will continue to cause irreparable injury to Plaintiff if not enjoined. Plaintiff is thus forced to file this action to combat Defendants' illegal infringement of the Plaintiff Copyrights through the Infringing Webstores.

Defendants should not be permitted to continue their unlawful activities. Plaintiff respectfully requests that this Court issue *ex parte* orders: (1) temporarily enjoining Defendants'

---

[1] "Defendants" collectively refers to those identified in Exhibit 1 of Plaintiff's Original Complaint.
[2] "Designs" collectively refers to the registered works exhibited in Exhibit 4 of Plaintiff's Original Complaint.
[3] *See* Exhibits 3 and 4 to Plaintiff's Complaint.
[4] *See* Exhibit 2 to Plaintiff's Complaint.

use and display of the Infringing Images; (2) temporarily disabling the pages featuring the Plaintiff Copyrights on the Infringing Webstores and restricting transfer of Defendants' assets pending the issuance of a final judgment in this matter to preserve Plaintiff's rights to an equitable accounting; and (3) expediting discovery to allow Plaintiff to inspect and copy Defendants' records relating to Defendants' unauthorized use of the Plaintiff Copyrights, infringing activities, and financial accounts.

## II. Statement of Facts

17. Plaintiff is engaged in the business of selling ceramic products and art supplies throughout the world, including within the Eastern District of Texas (collectively, Plaintiff's "Products"). Ex. 1, ¶ 6. Plaintiff owns all right, title, and interest in and to the Plaintiff Copyrights. *Id*. at ¶ 4. Plaintiff has expended considerable resources advertising, marketing, and promoting the products shown in the Plaintiff Copyrights (the "Products"), and these efforts have resulted in sales of thousands of units of the Products, as well as accumulation of invaluable consumer goodwill. *Id*. at ¶ 6. Plaintiff discovered that Defendants were using the Infringing Images to promote their own products, and Plaintiff confirmed that Defendants were offering said products for sale to U.S. and Texas residents. *Id*. at ¶¶ 9-11. Defendants and the Infringing Webstores do not conduct business with Plaintiff and do not have the right or authority to use, reproduce, or display the Plaintiff Copyrights in any manner whatsoever. *Id*. at ¶ 8.

Defendants' infringing activities are depriving Plaintiff of the ability to control the Plaintiff Copyrights and are preventing Plaintiff from enjoying its exclusive copyrights. Such loss of control over the Plaintiff Copyrights is neither calculable nor precisely compensable. Given the online nature of Defendants' commercial activities, Defendants have substantially benefitted from their unlawful tactics and infringement of the Plaintiff Copyrights to profit from the use of the Infringing Images.

### III. Argument

Defendants' willfully infringing conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and goodwill. As such, Plaintiff respectfully requests that this Court issue a temporary restraining order that, *inter alia*, freezes Defendants' assets and prevents the Infringing Webstore pages from using the Plaintiff Copyrights. Without this relief, Defendants' infringing activities will continue unabated, and Plaintiff will continue to suffer irreparable harm.

**A.  Plaintiff is Entitled to *Ex Parte* Relief**

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A plaintiff may further obtain *ex parte* injunctive relief under Rule 65(b) of the Federal Rules of Civil Procedure by showing either (1) that "notice to the adverse party is impossible, or in cases where the adverse party is unknown or is unable to be found[,]" or (2) that "notice to the defendant would render fruitless further prosecution of the action."[5]

Defendants operate the Infringing Webstores from foreign jurisdictions using fictitious names, and they do not provide their contact addresses. Ex. 1 ¶ 13. Defendants' true identities are therefore unknown, and Defendants are unable to be found. Plaintiff cannot give notice in this matter because even the email addresses Defendants use to operate and withdraw money from the Infringing Webstores are not publicly available. *See* the attached Declaration of Charles A. Wallace; Ex. 2, ¶ 6. Hence, no effective efforts have been made to give notice because the Defendants are all operating as anonymous webstores, and Plaintiff has no actual means of

---

[5] *Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-179, 2017 U.S. Dist. LEXIS 188249, at *3 (E.D. Tex. 2017); *First Command Bank v. Exner*, No. 4:21-CV-00621-P, 2021 WL 4047400, at *1 (N.D. Tex. 2021); *Anyadike v. Vernon Coll.,* No. 7:15-CV-00157-O, 2015 WL 12964684, at *2 (N.D. Tex. Nov. 20, 2015); *Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc*., No. 4:15-CV-0821-O, 2015 WL 13469996, at *1 (N.D. Tex. 2015); *see also Hurtado v. JPMC Specialty Mortg. LLC*, No. 4:14-CV-907-O, 2014 WL 12531234, at *1 (N.D. Tex. 2014).

providing notice to Defendants. *Id*. Plaintiff is therefore requesting that the Court order the third-party Marketplaces to provide Plaintiff with the email address that each Defendant uses to operate its Infringing Webstore. This will enable Plaintiff to notice the Defendants of these proceedings and communicate with the Defendants going forward.

Notwithstanding that a court order requesting Defendant email information is necessary for noticing Defendants of these proceedings, notice should not be required here because Defendants base their business off of using the Plaintiff Copyrights without license or permission, and are highly likely to transfer data, content, products, and financial assets to other webstores and accounts if they find out about these proceedings before the relief requested in this Motion is granted. Ex. 2, ¶ 7. Simply put, Plaintiff will be unable to recover in this action if the Defendants are noticed prior to the injunctive relief being granted, for such notice would effectively "render fruitless further prosecution of the action." *See Davis, 2017 U.S. Dist. LEXIS 188249, at \*3*; *see also* Ex. 2, ¶ 7. Thus, notwithstanding that Plaintiff has no meaningful way to contact Defendants, Plaintiff should not be required to give Defendants notice of these proceedings because doing so would cause further irreparable harm to Plaintiff. Ex. 2, ¶¶ 7-8. There are no less drastic means for protecting Plaintiff's interests.

As stated in Plaintiff's Original Complaint, each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas residents by offering shipping to Texas (Ex. 1 ¶ 11)[6] and, on information and belief, has sold and continues to sell products to consumers within the State of Texas through unauthorized and unlicensed use and display of the Plaintiff Copyrights. Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a prima facie case for personal jurisdiction—all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *Johnston v.*

---

[6] *See also* Exhibit 2 to Plaintiff's Complaint.

*Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008).

**B. Plaintiff is Entitled to a Temporary Restraining Order and Preliminary Injunction**

District Courts in this Circuit hold that the standards for granting a temporary restraining order and a preliminary injunction are identical.[7] A party requesting a temporary restraining order must demonstrate "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Emerald City Mgmt., L.L.C. v. Kahn*, 641 F. App'x 410, 413 (5th Cir. 2016) (citing *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008)).

**i. Plaintiff Will Likely Succeed on Its Copyright Infringement Claims**

A plaintiff is likely to succeed on a claim for copyright infringement if the plaintiff can establish: (1) ownership in a valid copyright and (2) copying by the defendant. *See Lakedreams v. Taylor,* 932 F.2d 1103, 1007-08 (5th Cir.1991) ("To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities"). There are two ways to prove copying: (1) with proof of direct evidence of copying or (2) through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the two works are "probatively" similar. *Gen. Univ. Sys., Inc. v. Lee,* 379 F.3d 131, 141-142 (5th Cir. 2004). Access need not be shown in some cases where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Gen. Univ. Sys,* 379 F.3d at 142.

Plaintiff's photographs subject to the Plaintiff Copyrights are wholly original and proprietary to Plaintiff. Ex. 1 ¶¶ 4, 9. Plaintiff's ownership of the Plaintiff Copyrights further establishes that the U.S. Copyright Office has attested to the validity of the registrations, the facts

---

[7] *See*, e.g., *Gadasalli v. Bulasa*, No. 4:22-CV-249, 2022 U.S. Dist. LEXIS 61791, at *4 (E.D. Tex. 2022); *Santiago v. Bank of N.Y. Mellon*, No. 4:18-CV-00533-ALM-CAN, 2018 U.S. Dist. LEXIS 220483, at *2 (E.D. Tex. 2018).

stated in the corresponding certificates, and that Plaintiff is the rightful owner of the Plaintiff Copyrights. *See Gen. Universal Sys.*, 379 F.3d at 141. Plaintiff has used the images to market its product for years Ex. 1 ¶ 6, which circumstantially establishes that Defendants had access to the copyright-protected materials. Further, in viewing an example of Plaintiff's copyright-protected images with an example of Defendant's Infringing Images as they appear on Infringing Webstores, a layman would undoubtedly view these works as not only probatively similar, but substantially similar:



9

It is plain to see that there is no possibility that Defendants independently created the Infringing Images, as the Infringing Images are "so strikingly similar," and in fact, identical, to Plaintiff's copyright-protected images. Indeed, each Defendant uses the some of the exact images subject to the Plaintiff Copyrights. Through Defendants' infringing conduct, including Defendants' willful and unauthorized use and reproduction of the Infringing Images, Defendants have directly infringed Plaintiff's exclusive rights in these images under the Copyright Act. For all of the above reasons and those stated in the Original Complaint, Plaintiff is therefore likely to succeed on the merits of its copyright infringement claims against Defendants.

### ii. There is a Substantial Threat That Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Courts in the Fifth Circuit have found that "[w]hen a plaintiff seeks an injunction under the Copyright Act, the plaintiff establishes a rebuttable presumption of irreparable harm when the plaintiff shows that a valid copyright has been infringed." *Evans v. Does*, No. A:23-CV-00722-DII, 2023 U.S. Dist. LEXIS 157939, at *3 (W.D. Tex. 2023).

Defendants' unauthorized use of the Infringing Images on its Infringing Webstores has and continues to irreparably harm Plaintiff by depriving Plaintiff of the ability to control use and licensing of its proprietary images, and by preventing Plaintiff from enjoying the exclusive rights conferred by the Copyright Act. 17 U.S.C. § 106. Such loss of control over these materials is neither calculable nor precisely compensable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. Further, Plaintiff has established a rebuttable presumption of irreparable harm by virtue of its showing that Defendants have infringed the Plaintiff Copyrights. Plaintiff is thus entitled to preliminary relief under the "irreparable harm" factor

### iii. The Balance of Harm Tips In Plaintiff's Favor

Courts in this Circuit have found that the balance of hardships weighs in a plaintiff's favor

when the defendant is infringing the plaintiff's copyright. *See, e.g., Olan Mills, Inc.*, 1988 WL 161314, at *3 (finding that the defendant's infringing conduct resulted in the loss of a primary source of the plaintiff's income, and that the defendant will suffer minimal hardship if enjoined from further infringing on the plaintiff's copyright); *see also Worlds of Wonder, Inc. v. Veritel Learning Sys., Inc.*, 658 F. Supp. 351, 357 (N.D. Tex. 1986) (finding that even if an infringing defendant could establish that an "injunction would have a devastating effect on its business," the court should not permit an infringer to construct its business around its infringement and deny preliminary injunctive relief).

Plaintiff is entitled to protect the integrity of its intellectual property and the Plaintiff Copyrights, and it continues to suffer hardship as long as Defendants are using, reproducing, and displaying the Infringing Images on its Infringing Webstores. As willful infringers, Defendants are entitled to little equitable consideration, for the only hardship Defendants would face would be to simply cease their infringing conduct. Thus, the balance of equities tips decisively in Plaintiff's favor, and equity requires Defendants to be ordered to cease their infringing conduct.

### iv. Issuance of the Injunction Is in the Public Interest

There is a public interest in preserving rights provided by federal copyright law. *Lakedreams v. Taylor*, 932 F.2d at 1110. Further, courts in this district have found that the public interest "is always served by requiring compliance with Congressional statutes . . . and by enjoining [infringement]." *HeartBrand Holdings, Inc. v. Whitmer*, No. SA-19-CV-00358-HJB, 2020 WL 6266010, at *3 (W.D. Tex. 2020) (citing *TGP Franchising, LLC v. Schooley Media Ventures, LLC*, No. SA-16-CA-546-FB, 2016 WL 10567692, at *5 (W.D. Tex. 2016). The public interest factor thus also weighs in favor of an injunction because the public interest—and the Copyright Act itself—would be undermined if Defendants' infringing conduct is allowed to stand. Permanently enjoining Defendants will therefore actually *advance* the public interest by protecting copyrighted

works and maintaining the integrity of the Copyright Act.

### C. The Equitable Relief Sought Is Appropriate

The Copyright Act specifically authorizes the Court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "[P]reliminary injunctions are a common judicial response to the imminent infringement of an apparently valid copyright." *Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir.1979). Indeed, "[p]reliminary injunctions are a more common remedy in copyright infringement cases because the core value of the rights afforded by the Copyright Act is that they are 'exclusive.'" *Olan Mills*, 1988 WL 161314, at *2 (citing 17 U.S.C. § 106). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Rule 65(d)(2)(C) also authorizes this Court to bind any third parties "who are in active concert or participation" with Defendants, or with Defendants' agents and are given actual notice of the order—in this case, this includes the relevant e-commerce Marketplace platforms, payment processors, and financial institutions connected with Defendants. The facts in this case warrant such relief.

### i. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized Reproduction and Display of the Infringing Images is Appropriate

Plaintiff requests an order requiring Defendants to immediately cease all use of its Infringing Images in connection with all Defendants' Infringing Webstores. The Copyright Act specifically provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). An *ex parte* order is appropriate where there is a danger that the defendant will destroy or hide evidence. *See Century Home Ent., Inc. v.*

12

*Laser Beat, Inc.*, 859 F. Supp. 636, 638–639 (E.D.N.Y. 1994) (a plaintiff need not show that a particular defendant would fail to adhere to a temporary restraining order, "but rather only that someone like the Defendant would be likely to hide or destroy the evidence of his infringing activity"). In light of the extensive evidence of Defendants' acts of infringement, and the likelihood that parties like these Defendants will destroy or hide evidence to avoid liability, Plaintiff respectfully requests that this Court issue an *ex parte* order restraining Defendants from further reproduction and display of the Infringing Images pursuant to Fed. R. Civ. P. 65 and 17 U.S.C. § 502.

As discussed above, such relief is necessary to stop the ongoing harm to Plaintiff, and to prevent Defendants from continuing to benefit from their infringing use of the Infringing Images. The need for *ex parte* relief is magnified in today's global economy where infringers can operate on an international scale and anonymously over the Internet, for Plaintiff has not yet been able to discover the true identities and locations of Defendants. Ex. 1 ¶¶ 13-14. If immediate injunctive relief is granted, Plaintiff will be able to once again control use of these materials and enjoy its exclusive rights in the Plaintiff Copyrights conferred by the Copyright Act. A temporary restraining order immediately enjoining Defendants' unauthorized and illegal reproduction and display of Plaintiff's materials is therefore appropriate and necessary to preserve both Plaintiff's rights, as well as the integrity of the Copyright Act itself

### ii. An Order Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff will ultimately be entitled to an equitable accounting of profits from Defendants' use of the Plaintiff Copyrights to sell their products. Plaintiff thus additionally respectfully requests an *ex parte* order restraining Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits is not impaired. Specifically, on information and belief, Defendants hold most of their assets in China (Ex. 1 ¶ 13) making it easy to hide or dispose of assets if an *ex parte*

order is not issued, which would render an accounting by Plaintiff futile. An asset restraining order limiting the transfer of Defendants' assets is therefore critical to maintain the status quo and preserve Plaintiff's right to an equitable accounting. In addition, the amount of damages to which Plaintiff is entitled as set forth in the Complaint far exceeds any amount likely contained in any of Defendants' merchant accounts or other U.S. financial accounts on the day the accounts are frozen. For example, Plaintiff's prayer for relief requests statutory damages of $150,000 from each Defendant. In collecting such a judgment, Plaintiff would be entitled to more than just the sales figures attributable to the Defendants' use of the Plaintiff Copyrights to sell their products.

The Fifth Circuit and the Supreme Court have authorized pre-judgment asset restraints in cases where the plaintiff requests preliminary relief. *See, e.g., United States v. First Nat. City Bank*, 379 U.S. 378, 385 (1965) (the temporary injunction issued by the district court was appropriate to prevent dissipation of assets); *see also Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940) (a district court has sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity, and such an injunction "was a reasonable measure to preserve the status quo pending final determination"); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (an accounting of lost profits under the Lanham Act is "subject to the principles of equity[;]" and the district court was thus authorized to preserve the status quo by freezing the assets in question). Thus, this Court should preserve the status quo and issue *ex parte* injunctive relief by freezing Defendants' assets to prevent assets from being withdrawn and relocated to avoid satisfaction of a judgment.

The Supreme Court has noted that when equitable claims are at issue, as opposed to solely legal claims for damages, the rule barring issuance of a preliminary injunction freezing assets is inapplicable. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 324–325 (1999) (distinguishing *Deckert*, because the *Grupo Mexicano* plaintiff had not sought

14

equitable relief). Various Circuits have discussed that courts may restrain assets in cases where equitable relief is sought.[8] The *CSC Holdings* court even granted an asset freeze on the defendants pending final disposition of the case because "the assets in question were profits [defendants] made by unlawfully stealing [plaintiff's] services." *CSC Holdings, Inc.*, 309 F.3d at 996. Moreover, the Federal Rules of Civil Procedure give this Court the power to bind any third parties who are in active concert with Defendants that noticed of an order freezing Defendants' assets. *See* Fed. R. Civ. P. 65(d)(2)(C).

Although Plaintiff seeks damages for Defendants' infringing conduct, Plaintiff also seeks equitable relief in the form of an injunction restraining further infringing conduct and an injunction freezing and transferring illegally-obtained assets to Plaintiff. As such, this action primarily concerns equitable relief. Thus, this Court should preserve the status quo by following *Deckert* and ordering an asset freeze on each Defendant's merchant and bank accounts.

Furthermore, as set forth above, Plaintiff has shown that it is likely to succeed on the merits of its claims, that it has and will continue to suffer irreparable injury from Defendants' use of the Plaintiff Copyrights, and that Defendants are likely to hide their assets. In light of the fact that Defendants use protected intellectual property to improperly boost their online sales, it is reasonable to believe that Defendants will also improperly withdraw monies subject to an equitable

---

[8] *See, e.g., Kennedy Bldg. Assocs. v. CBS Corp.,* 476 F.3d 530, 535 (8th Cir. 2007) (distinguishing *Grupo Mexicano* because "the underlying relief sought is equitable, rather than legal"); *see also SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 734 (11th Cir.2005) ("*Grupo Mexicano* does not control the outcome of this case, because the SEC seeks equitable relief (disgorgment) [sic], not just money damages"); *In re Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir. 2004) (*Grupo Mexicano* . . . exempts from its proscription . . . cases in which equitable relief is sought"); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (the *Grupo Mexicano* "decision held that a district court may not issue an injunction freezing assets in an action for money damages where no equitable interest is claimed . . . [h]owever . . . a restraint on assets was still proper if a suit sought equitable relief"); *United States ex rel Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489, 496–497 (4th Cir. 1999) (*Deckert* still authorizes a district court to preliminarily freeze assets in a case involving equitable claims); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief"); *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559-560 (9th Cir. 1992) (the district "had the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief . . . '[t]he injunction here enjoins the defendants from secreting those assets necessary to preserve the possibility of equitable relief'"); *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) ("A court has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

accounting to locations which neither Plaintiff nor this Court will ever discover. *See Reebok Int'l Ltd.*, 737 F. Supp. at 1527 ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds"). An asset restraining order limiting the transfer of Defendants' assets is thus critical to maintain the status quo and preserve Plaintiffs' right to an equitable accounting.

### iii. Plaintiff Is Entitled to Expedited Discovery

Plaintiff also respectfully requests an *ex parte* Order expediting discovery in this case so that Plaintiff may discover the names and email addresses (for service of process), and online webstores operated by Defendants, as well as the identities of the financial institutions and payment processors associated with Defendants for purposes of enforcing orders from this Court. The discovery requested regarding Defendants' financial institutions and payment processors is limited to include only that which is essential to prevent further irreparable harm to Plaintiff and allow Plaintiff to recover from Defendants' infringing conduct.

The Fifth Circuit weighs five factors to balance the need for disclosure of a defendant's information against its First Amendment expectation of privacy. These factors include: "(1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy." *Funimation Entm't v. Does*, No. 2:11-CV-269, 2012 U.S. Dist. LEXIS 198168, at *4-5 (E.D. Tex. 2012).

Plaintiff made a *prima facie* showing of its likelihood of success on the merits of its claims against the Defendants. Thus, the first factor weighs in favor of allowing expedited discovery.

The second factor also weighs in favor of expedited discovery. Plaintiff has already identified the URL addresses linked to the pages on the Infringing Webstores where products are

16

being offered for sale.[9] Plaintiff seeks only the associated Defendant names, Defendant email addresses, the online webstores operated by Defendants, the number of products each Defendant sold using the Plaintiff Copyrights, where each such product was sold, and the identities of the financial institutions and payment processors associated with Defendants. Thus, the discovery is specific.

The third and fourth factors further weigh in favor of expedited discovery. Plaintiff has obtained all the information it can through informal discovery means (Ex. 1 ¶¶ 9-11, 13, 14) and will be unable to properly serve Defendants (and Defendants will be unable to respond to Plaintiff's allegations) without an order from this Court subpoenaing the requested Defendant information.

Lastly, Plaintiff is entitled to expedited discovery in light of Defendants' minimal expectation of privacy. The policies publicly adopted by the various e-commerce platforms, to which their subscribers—including Defendants—must commit, specifically note that the Defendants are agreeing that their personal information will be disclosed to comply with court orders or to preserve third party rights.[10] Accordingly, the fifth and final factor also weighs in favor of expedited discovery because Defendants have little expectation of privacy in their unauthorized

---

[9] *See* Exhibit 2 to Plaintiff's Complaint.

[10]
- Alibaba – "We may disclose (or provide access to) personal information. . . where we believe it is necessary to comply with applicable laws." Alibaba Group, *Alibaba.com Privacy Policy*, rulechannel.alibaba.com/icbu?type=detail&ruleId=2034&cId=1306#/rule/detail?cId=1306&ruleId=2034, accessed Feb. 12, 2024.
- AliExpress – "We disclose/share personal information . . . where we believe it is necessary to comply with applicable laws . . ." Alibaba Group, *AliExpress.com Privacy Policy*, terms.alicdn.com/legal-agreement/terms/suit_bu1_aliexpress/suit_bu1_aliexpress 201909171350_82407.html?spm=service, accessed Feb. 12, 2024.
- Amazon – "We release account and other personal information when we believe release is appropriate to comply with the law" Amazon.com, Inc., *Amazon.com Privacy Notice*, amazon.com/gp/help/customer/display.html?nodeId=468496&ref_= footer_privacy, accessed Feb. 12, 2024.
- Bonanza – "Bonanza will disclose your personal information. . . in responding to subpoenas, court orders or legal process[.]" Bonanza.com, *Your privacy*, bonanza.com/site_help/privacy_policy, accessed Apr. 22, 2024.
- DHgate – "we may collect and use your relevant personal information without seeking your authorization and consent . . . Necessary to perform our legal obligations" DHgate.com Inc., *Privacy Policy*, help.dhgate.com/help/buyer_about_ usen.php?catpid=g4, accessed Feb. 12, 2024.
- eBay – ". . . we will only share and transfer your personal data for specific and definite purposes pursuant to the principles of lawfulness" eBay Inc., *China Privacy Notice*, ebay.com/help/policies/member-behaviour-policies/user-privacy-notice, accessed Feb. 12, 2024.
- Shopify – "When we are legally required to share your personal information, we will tell you in advance . . ." Shopify Inc., *Privacy Policy*, shopify.com/legal/privacy, accessed Feb. 12, 2024.
- Walmart – "We may disclose your personal information when required by law or legal process" Walmart Inc., *Walmart Privacy Policy*, corporate.walmart.com/privacy-security/walmart-privacy-policy, accessed Feb. 12, 2024.

reproduction and advertising of the Infringing Images via the Infringing Webstores.

As demonstrated above, Plaintiff is being irreparably harmed by Defendants' unauthorized use of the Plaintiff Copyrights, and Defendants have not provided any personal, contact, or financial information on the Infringing Webstores. Without being able to discover Defendants' personal and contact information, Plaintiff will be unable to properly serve Defendants. Similarly, without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the resulting order.

Fed. R. Civ. P. 65(d)(2)(C) authorizes this Court to bind any third parties "who are in active concert or participation" with Defendants, or with Defendants' agents and are given actual notice of the order, such as the relevant e-commerce platforms, payment processors, and financial institutions connected with Defendants. Plaintiff's request for the asset restraining order above may have little meaningful effect without expedited discovery. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### IV. Security Pursuant to Federal Rule of Civil Procedure 65(c)

Under Fed. R. Civ. P. 65, the party seeking a preliminary injunction must "give[ ] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Fifth Circuit has held that the security amount imposed is in the court's discretion, and that the "proper" amount of security may be zero. *See Corrigan Dispatch Co. v. Casa Guzman, S. A*., 569 F.2d 300, 302–03 (5th Cir. 1978) ("The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all"); *see also Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2019 WL 3219939, at *11 (E.D. Tex. 2019) (there is no evidence that the defendant will suffer any harm from the issuance of an injunction); *Rohm & Haas Co. v. Cumberland Chem.*

18

*Corp.*, No. H-82-1241, 1983 WL 52378, at *6 (S.D. Tex. 1983) (the parties were able "to respond to potential damages in the event th[e] injunction is ultimately overturned"). The evidence supporting this Motion establishes that Defendants willfully infringed on the Plaintiff Copyrights, and as stated above, the only harm Defendants will face from issuance of the injunctive relief requested will be directly linked to Defendants' infringing conduct. Plaintiff thus respectfully requests that this Court, in issuing the injunctive relief herein requested, exercise its discretion to require no security from Plaintiff.

## V.  Conclusion

Plaintiff has expended significant time, energy, finances, and other resources to promote Plaintiff's copyright-protected materials in relation to its products—to this end, Plaintiff procured copyright registrations in the materials so that it could protect its valuable intellectual property rights. Defendants nonetheless are illegally benefitting from Plaintiff's work product, and unless enjoined as herein requested, Defendants will continue to irreparably deprive Plaintiff from enjoying exclusive use of its photographs and video under the Copyright Act. Therefore, entry of an *ex parte* order is necessary to protect the Plaintiff Copyrights and the integrity of the Copyright Act, and to prevent further irreparable harm to Plaintiff. In view of the foregoing, Plaintiff respectfully requests that this Court enter a temporary restraining order in the form submitted herewith and set a status hearing before the expiration of the temporary restraining order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Dated: July 11, 2024　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　**SCALE LLP**

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Charles A. Wallace*
　　　　　　　　　　　　　　　　　　　　　　Charles A. Wallace
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24110501
　　　　　　　　　　　　　　　　　　　　　　James H. Creedon
　　　　　　　　　　　　　　　　　　　　　　Texas Bar No. 24092299
　　　　　　　　　　　　　　　　　　　　　　5473 Blair Road, Suite 100
　　　　　　　　　　　　　　　　　　　　　　Dallas, Texas 75231
　　　　　　　　　　　　　　　　　　　　　　Tel.　　415.735.5933
　　　　　　　　　　　　　　　　　　　　　　Fax　　415.573.0983
　　　　　　　　　　　　　　　　　　　　　　cwallace@scalefirm.com
　　　　　　　　　　　　　　　　　　　　　　jcreedon@scalefirm.com

　　　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR PLAINTIFF
　　　　　　　　　　　　　　　　　　　　　　[REDACTED]

## CERTIFICATE OF SERVICE

　　I hereby certify that on July 11, 2024, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Charles A. Wallace*
　　　　　　　　　　　　　　　　　　　　　　　　Charles A. Wallace

## CERTIFICATE OF CONFERENCE

　　No defendant has appeared yet in this case, and therefore, pursuant to Local Rule 7(g), undersigned counsel states that he is unable to meet and confer with the defendants and unable to state whether this motion is opposed.

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Charles A. Wallace*
　　　　　　　　　　　　　　　　　　　　　　　　Charles A. Wallace

## MOTION TO FILE UNDER SEAL

　　I hereby certify that, in accordance with Local Rule CV-5(a)(7), a motion to seal the above document has been filed with this Court.

　　　　　　　　　　　　　　　　　　　　　　By: */s/ Charles A. Wallace*
　　　　　　　　　　　　　　　　　　　　　　　　Charles A. Wallace