UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRUSH STROKES POTTERY INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:24-cv-00634 |
| v. | § | Judge Mazzant |
| | § | |
| THE INDIVIDUALS, BUSINESS | § | |
| ENTITIES, AND UNINCORPORATED | § | |
| ASSOCIATIONS IDENTIFIED ON | § | |
| EXHIBIT 1, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brush Strokes Pottery, Inc. filed Plaintiff's Ex Parte Motion for, and Memorandum in Support of, Entry of a (1) Temporary Restraining Order, (2) Expedited Discovery Order, and (3) Asset Restraining Order (Dkt. #6). Within the motion, Brush Strokes Pottery, Inc. requested preliminary injunctive relief (*See* Dkt. #6). After considering the motion and the relevant pleadings and holding a hearing, the Court finds that Brush Strokes Pottery, Inc.'s request for preliminary injunctive relief should be **GRANTED**.

## BACKGROUND

### I.     Factual History

Plaintiff, Brush Strokes Pottery, Inc. ("Brush Strokes") is engaged in the business of designing, creating, distributing, and selling ceramic goods and art supplies and has been since as early as 2006 (Dkt. #1 ¶¶ 14, 17). The Brush Strokes Pottery lighted cactus ("Lighted Cactus") is

one of Brush Strokes' ceramic goods (Dkt. #1 ¶ 14). Brush Strokes sells Lighted Cactuses throughout the world, including within the Eastern District of Texas (Dkt. #6 at p. 5).

Brush Strokes alleges it is the owner of all right, title, and interest in and to U.S. Copyright Registration Nos. VA0002391110, VA0002391118, VA0002391097, VA0002391095, VA0002391116, and VA0002391092 (collectively, the "Registrations") (Dkt. #1 ¶ 4). Brush Strokes sells the copyrighted Lighted Cactuses online via brushstrokespottery.com (Dkt. #1 ¶ 13).

Brush Strokes brought suit against Defendants, identified in Exhibit 1 of its Complaint, alleging that Defendants sold and continue to sell products that violate Brush Strokes' copyrights in its Lighted Cactuses (Dkt. #1 ¶ 4; Dkt. 3). Brush Strokes argues that Defendants have full knowledge of Brush Strokes ownership and rights in the Registrations, yet Defendants are using, advertising, distributing, selling, or offering the products for sale on interactive commercial webstores ("Infringing Webstores") that infringe the Registrations (Dkt. #1 ¶¶ 19–20).

Brush Strokes submits the following comparison of Brush Strokes' Lighted Cactuses and the products allegedly sold by Defendants:



(Dkt. #1 ¶ 20). Brush Strokes states it has never assigned or licensed its Registrations or rights to the Lighted Cactuses to any Defendants in this matter (Dkt. #1 ¶ 18).

## II.     Procedural History

Brush Strokes filed an ex parte motion for a temporary restraining order, asset restraining order, and an expedited discovery order on July 11, 2024 (Dkt. #6). Additionally, Brush Strokes requested preliminary injunctive relief (*See* Dkt. #6). On July 25, 2024, the Court entered an ex parte temporary restraining order and set a preliminary injunction hearing for August 8, 2024 (Dkt. #16). The Court set the required bond for the temporary restraining order to $0 (Dkt. #16). The order also granted Brush Strokes' request for an asset restraining order and expedited discovery (*See* Dkt. #16). On August 8, 2024, the Court held a preliminary injunction hearing (Dkt. #19). On August 8, 2024, the Court found good cause to extend its previous ex parte

temporary restraining order (*See* Dkt. #20). Under Federal Rule of Civil Procedure 65, the Court's ex parte temporary restraining order was set to expire on August 22, 2024.

At the preliminary injunction hearing, counsel for Brush Strokes appeared. Counsel for eighteen Defendants also appeared and indicated that said eighteen Defendants were in the settlement process with Brush Strokes. On August 14, 2024, the Court modified the temporary restraining order to reduce the financial terms of the temporary restraining order upon said eighteen Defendants (Dkt. #25). Subsequently, Brush Strokes voluntarily dismissed its claims against various Defendants with prejudice (Dkt. #22; Dkt. #26) (Dkt. #22; Dkt. #26). All remaining Defendants (the "Remaining Defendants") did not appear, and no responses were filed regarding the preliminary relief requested.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

### I.    Preliminary Injunction

The Copyright Act specifically authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "[P]reliminary injunctions are a common judicial response to the imminent infringement of an apparently valid copyright." *Dall. Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187 (5th Cir. 1979).

#### A.  Likelihood of Success on the Merits

Brush Strokes has demonstrated a substantial likelihood of success on the merits of its copyright infringement claim. To assess likelihood of success on the merits, courts look to "standards provided by the substantive law." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir.1990). A movant must present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). A prima facie case does not mean Brush Strokes must prove that it is entitled to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

A plaintiff is likely to succeed on a claim for copyright infringement if the plaintiff can establish: (1) "ownership of the material and [(2)] copying by the defendant." *Lakedreams v. Taylor*, 932 F.2d 1103, 1007 (5th Cir. 1991). "To establish 'ownership,' the plaintiff must prove that the material is original, that it can be copyrighted, and that [the plaintiff] has complied with statutory formalities." *Id.* at 1007–08. There are two ways to prove copying: (1) with proof of direct evidence of copying or (2) through circumstantial evidence demonstrating that the defendant had access to the copyrighted work and that the two works are "probatively" similar. *Gen. Univ. Sys.,*

*Inc. v. Lee*, 379 F.3d 131, 141–142 (5th Cir. 2004). Access need not be shown in some cases where "the two works are so strikingly similar as to preclude the possibility of independent creation." *Id.* at 142.

### 1.   Ownership of a valid copyright

Brush Strokes has sufficiently shown ownership of a valid copyright at this stage. "A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Gen. Universal Sys.*, 379 F.3d at 141. Here, Brush Strokes submitted a copy of the Registration for each of the products alleged to be infringed upon by Defendants (*See* Dkt. #3-10; Dkt. #3-11). Defendants have not contended the validity of Brush Strokes' Registrations. Thus, Brush Strokes is substantially likely to succeed on the first element of its copyright infringement claim.

### 2.   Copying by the Defendant

Brush Strokes has sufficiently alleged copying by the Defendants. Brush Strokes claims that it has been creating and marketing Lighted Cactuses for years (*See* Dkt. #3-10; Dkt. #6 at p. 8). This circumstantial evidence is substantially likely to demonstrate that Defendants had access to the Lighted Cactuses. Further, a review of Brush Strokes' Lighted Cactuses and Defendants' allegedly infringing products, as illustrated *supra*, indicates that the works are substantially likely to at least be probatively similar (*See* Dkt. #1 ¶ 20; Dkt. #6 at p. 9). Therefore, Brush Strokes has shown that it is substantially likely to succeed on the second element of its copyright infringement claim.

For these reasons, Brush Strokes has shown that it is substantially likely to succeed on the merits of its copyright infringement claim.

### B.  Irreparable Harm

Next, Brush Strokes must demonstrate that it will likely suffer irreparable harm in the absence of preliminary relief. Irreparable harm requires a showing that (1) the harm to the plaintiff is imminent, (2) the injury would be irreparable, and (3) that the plaintiff has no other adequate legal remedy. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). "[A] finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes 'establishment of the dollar value of the loss . . . especially difficult or speculative.'" *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989); *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (finding that "price erosion, damage to ongoing customer relationships, loss of customer goodwill (e.g., when an effort is later made to restore the original price), and loss of business opportunities" support a finding of irreparable harm).

Brush Strokes argues that "Defendants' unauthorized use of the [Lighted Cactuses] on Infringing Webstores has and continues to irreparably harm [Brush Strokes] by depriving [it] of the ability to control use and licensing of its proprietary images, and by preventing [it] from enjoying the exclusive rights conferred by the Copyright Act" (Dkt. #6 at p. 10).

As to the Remaining Defendants, because there has been no indication that any of the Remaining Defendants will cease selling the allegedly infringing products, Brush Strokes has shown it will likely suffer irreparable harm in the absence of preliminary relief against the Remaining Defendants. Therefore, the Court will consider the rest of the preliminary injunction factors as they relate to the Remaining Defendants.

### C.  Balance of the Equities

When deciding whether to grant a preliminary injunction, "court[s] must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987). This element helps courts assess "the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. 2020).

Given that the requested preliminary injunction only precludes the Remaining Defendants from selling allegedly infringing products and allows them to otherwise continue selling their products, the Court finds that the risk of irreparable harm to Brush Strokes outweighs the minimal harm, if any, placed upon the Remaining Defendants. Accordingly, this factor favors issuance of a preliminary injunction. *See Prep Sols., Ltd. v. Leicht*, No. 222CV00123JRGRSP, 2022 WL 1812298, at *4 (E.D. Tex. June 2, 2022) (citing *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, No. CA3-88-0333-D, 1988 WL 161314, at *3 (N.D. Tex. Dec. 14, 1988) (finding that a defendant will suffer minimal hardship if enjoined from further infringement of plaintiff's copyright when the injunction permits defendant to "continu[e] other types of [business]")).

### D.  Public Interest

Finally, Brush Strokes must show that granting this injunction would not disserve the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312 (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)). "[I]mplicit

in copyright . . . law[ ]" is the policy judgment "that the public's interest in competition may be outweighed by the public's interest in preserving rights in intellectual property." *Allied Mktg.*, 878 F.2d at 810 n.1. Here, Brush Strokes has shown a substantial likelihood that it owns a valid copyright in its Lighted Cactuses. Therefore, the public's interest in preserving Brush Strokes' alleged rights in its Designs outweighs any interest the public has in competition. Accordingly, this factor weighs in favor of granting a preliminary injunction.

For the forgoing reasons, Brush Strokes has satisfied the requirements for a preliminary injunction against the Remaining Defendants.

## II.    Asset Freeze

"[A]n asset freeze by preliminary injunction is an appropriate method to assure the meaningful, final equitable relief sought." *Tisino v. R & R Consulting & Coordinating Grp., L.L.C.*, 478 F. App'x 183, 185 (5th Cir. 2012) (citing *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987)). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *see also Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 707 (S.D. Tex. 2002); *Prep Sols., Ltd. v. Leicht*, No. 2:22-CV-00123-JRG-RSP, 2022 WL 1812298, at *2 (E.D. Tex. June 2, 2022). "Once a plaintiff has demonstrated entitlement to an asset freeze and made a showing of profits attributable to infringement earned by the defendant, the burden shifts to the defendant to show what, if any, assets are exempt from the freeze on the ground that they are not linked to the profits of the allegedly infringing activity." *Prep Sols.*, 2022 WL 1812298, at *2.

Brush Strokes asserts that an asset freeze is critical to maintain the status quo and preserve its right to an equitable accounting because "Defendants hold most of their assets in China (Ex. 1 ¶ 13) making it easy to hide or dispose of assets" (Dkt. #6 at p. 13). Moreover, Brush Strokes has submitted evidence that Defendants are selling the allegedly infringing products online such that Defendants are earning profits attributable to the infringement (*See* Dkt. #3-1; Dkt. #3-2, Dkt. #3-3; Dkt. #3-4; Dkt. #3-5; Dkt. #3-6; Dkt. #3-7; Dkt. #3-8; Dkt. #3-9).

As to the Remaining Defendants, the Court finds that an asset freeze is appropriate as part of the preliminary relief sought.

## III.   Security Requirement

As with the temporary restraining order, exercising its discretion pursuant to *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302–03 (5th Cir. 1978), the Court finds that Brush Strokes' proper security amount required under FED. R. CIV. P. 65(c) is **$0**.

## CONCLUSION

It is **ORDERED** that Plaintiff's request for preliminary injunctive relief is hereby **GRANTED** as to all Individuals, Business Entities, and Unincorporated Associations Identified on Exhibit 1, with the exception of the former Defendants listed in the August 13, 2024 Notice of Dismissal (Dkt. #22) and the August 20, 2024 Notice of Dismissal (Dkt. #26) ("Exhibit 1 Defendants").

Therefore, it is **ORDERED**:

1. Exhibit 1 Defendants, their successors, affiliates, servants, officers, agents, independent contractors, and employees, and anyone acting in active concert or participation with or at the behest or direction of any of the foregoing, be preliminarily enjoined and restrained from:
   a. using, reproducing, displaying, or enabling others to use, reproduce, or display Plaintiff's copyright-protected images which appear in Exhibit 4 of Plaintiff's Original

Complaint, and which are protected by U.S. Copyright Office as Reg. Nos. VA0002391110, VA0002391118, VA0002391097, VA0002391095, VA0002391116, and VA0002391092 (collectively, the "Plaintiff Copyrights");

b. moving, relocating, or otherwise disposing of any funds currently located in Exhibit 1 Defendants' online accounts, including, without limitation, from Alibaba, AliExpress, Amazon, Bonanza, DHGate, eBay, Joybuy, Shopify, Walmart, Alipay, PayPal, Stripe, Payoneer, WorldFirst, and Western Union;

c. removing, destroying, or otherwise disposing of computer files, electronic files, business records, or documents relating to any of Exhibit 1 Defendants' webstores, websites, assets, operations, or relating in any way to the reproduction and display of the Plaintiff Copyrights; and

d. engaging in any other activity that infringes on Plaintiff's rights in any manner.

2. Each Exhibit 1 Defendant, within 14 days after receiving notice of this Order, shall serve on Plaintiff a written report under oath providing: (a) their true name and physical address; (b) all websites and online marketplace accounts on any platform that they own and/or operate; (c) all of their associated financial accounts, including but not limited to all Alibaba, AliExpress, Amazon, Bonanza, DHGate, eBay, Joybuy, Shopify, Walmart, Alipay, PayPal, Stripe, Payoneer, WorldFirst, Western Union, etc. accounts; (d) the quantity of products that they have sold using the Plaintiff Copyrights ("Products"); (e) the location to where each Product was shipped; and (f) the steps taken by each Exhibit 1 Defendant to comply with paragraphs 1(a)–(d) above.

3. Exhibit 1 Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring, disposing of, or secreting any money, stocks, or other assets of Exhibit 1 Defendants until further ordered by this Court.

4. All Third-Party Providers and their affiliates are ordered to, within 2 business days of receipt of this Order, locate all accounts and funds connected to the Exhibit 1 Defendants, and block all money transfers and funds from being transferred by such Exhibit 1 Defendants until further ordered by this Court.

5. This Order shall apply to the Infringing Webstores, websites, and any other domain names properly brought to this Court's attention and verified by sworn declaration that verifies such new webstores or domain names are being used by Exhibit 1 Defendants for the purpose of infringing the Plaintiff Copyrights.

**IT IS SO ORDERED.**

**SIGNED this 21st day of August, 2024.**

_____

AMOS L. MAZZANT

UNITED STATES DISTRICT JUDGE